Filed 12/20/21  Verrees v. Davis CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MARGARET VERREES,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>JAMES DAVIS et al.,<br><br>Defendants and Respondents. | F079517<br><br>(Fresno Super. Ct. No. 18CECG01307)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Rosemary T. McGuire, Judge.

Margaret Verrees, in pro. per., for Plaintiff and Appellant.

McCormick, Barstow, Sheppard, Wayte & Carruth, Michael F. Ball, and Gary A. Hunt for Defendants and Respondents.

-ooOoo-

Plaintiff Margaret Verrees, M.D., filed this lawsuit against the fellow members of her employing neurosurgery practice group, the practice group, the teaching hospital affiliated with the practice group, and others, asserting causes of action for fraud, breach of contract, negligent infliction of emotional distress, intentional infliction of emotional

distress and civil conspiracy. Defendants filed a demurrer to the first amended complaint, which the superior court sustained without leave to amend.

Verrees appealed, contending she adequately alleged facts to state her causes of action or, alternatively, she should have been granted leave to amend. Defendants' demurrer was filed after Verrees unsuccessfully took her discrimination claims to arbitration and then unsuccessfully sued various defendants in federal court. As explained below, we conclude Verrees's allegations are not sufficient to state a cause of action, and she has failed to carry her burden of demonstrating a reasonable possibility that the defects could be cured by amendment.

We therefore affirm the judgment of dismissal.

## FACTS

Verrees is a neurosurgeon who in 2008 was persuaded to come to Fresno from Cleveland to practice medicine. She was employed in Fresno by the Central California Faculty Medical Group, Inc. (Practice Group). Practice Group is an organization of faculty physicians and is affiliated with the University of California, San Francisco-Fresno Medical Education Program (UCSF Fresno). Verrees also secured privileges to practice medicine at Fresno Community Hospital and Medical Center (CRMC)[1] under CRMC's affiliation agreement with UCSF Fresno. Verrees's work within Practice Group was overseen by, among others, Dr. Jim Davis, its chief of surgery.

Beginning in late 2010, tensions and disagreements arose between Verrees and Davis regarding Verrees's work performance. On April 22, 2011, Davis sent a memorandum to Joyce Fields-Keene (Fields-Keene), chief executive officer of Practice Group, recounting 27 incidents of concern involving Verrees that Davis characterized as "extremely alarming." These incidents included both performance and behavior-related

---

[1] Verrees referred to this entity as Community Medical Centers, Community Regional Medical Center, and CRMC. For convenience, this opinion uses CRMC to designate that entity.

2.

matters. At that time, two incidents had been referred by Davis to Practice Group's performance improvement committee. Also, Verrees was asserting other Practice Group physicians were harassing and discriminating against her. On May 3, 2011, Davis informed Fields-Keene that Verrees had left an operating room for an extended period of time during a procedure and wrote a memoranda to Fields-Keene and the performance improvement committee regarding an operation performed by Verrees that took an undue amount of time and produced a nominal outcome for the patient. Davis recommended to Fields-Keene and the Practice Group executive committee that they not renew Verrees's employment contract. The executive committee agreed and elected to not renew her contract. Practice Group bought out Verrees's contract, and her employment ended on May 16, 2011. Verrees's academic appointment at UCSF Fresno also was terminated around this time.

On July 26, 2011, CRMC notified Verrees that six of her cases, all performed during her employment with Practice Group, were being sent out for an independent review by Dr. Shuer, a board-certified neurosurgeon, professor of neurosurgery at the Stanford University School of Medicine, and former chief of staff for Stanford Hospital and Clinics. Shuer concluded that all six cases constituted a "significant deviation from the standard of care," and that one case resulted in a patient's death. Shuer also opined that Verrees was temperamentally unable to practice neurosurgery in a clinical education setting and, therefore, Practice Group was justified in electing not to renew her employment contract.

In February 2012, Verrees was granted privileges at Saint Agnes Medical Center (St. Agnes). A June 15, 2012 letter from St. Agnes reprimanded Verrees for a "large number of incident reports over a short period of time." In August 2012, St. Agnes confirmed restrictions on Verrees's privileges. In October 2012, Verrees resigned her position at St. Agnes. In addition, CRMC revoked Verrees's medical privileges at its facilities in November 2012.

*Arbitration*

In February 2012, Verrees filed an arbitration claim against Practice Group, asserting claims of retaliation, discrimination, and sexual harassment. In June 2014, the arbitrator issued a decision granting Practice Group's motion for summary judgment. The arbitrator found that Verrees's belief that she was improperly treated during her employment with Practice Group was ultimately only supported by Verrees's "own statements, feelings and suppositions" rather than by admissible evidence.

Verrees alleges that the arbitration proceeding was "marred by Defendants threatening witnesses, suborning perjury, creati[ng] false evidence via inducing an expert to provide corroboration of wrongdoing that never occurred, [and using] false evidence during the legal procedure."

*Medical Board*

In 2013, while the arbitration was pending, Davis submitted allegations about Verrees to the Medical Board of California (Medical Board). The Medical Board conducted an investigation, with both Verrees and defendants submitting information in 2014. Near the end of 2015, the Medical Board completed its investigation and exonerated Verrees.

*2016 Federal Lawsuit*

In September 2016, representing herself, Verrees filed a complaint in the United States District Court for the Eastern District of California, against Davis, Wells, Fields-Keene, CRMC, UCSF Fresno, Practice Group, University Neurosurgery Associates (UNA)[2], Santé/Advantek Benefits Administrators (Santé)[3], and Joan Voris, a UCSF

---

[2] Verrees alleged UNA was a subsidiary of Practice Group.

[3] In their federal pleadings, the Community Medical Center defendants asserted that CRMC, Community Medical Center and Santé/Advantek Benefits Administrators are not separate legal entities; instead, CRMC and CMC were described as business aliases of Fresno Community Hospital and Medical Center. Santé was described as Santé Health System, Inc., pursuing a line of business under the name Advantek Business

4.

Fresno assistant dean.  Verrees asserted (1) violations of the Racketeer Influenced and Corrupt Organizations Act, 18 United States Code section 1961 et seq.; (2) violations of federal antitrust law, (3) interference with prospective economic advantage; and (4) defamation.  In December 2016, Verrees filed a 92-page first amended complaint.

In October 2017, after Verrees had unsuccessfully attempted to file a 2,185-page second amended complaint and a 290-page second amended complaint, the federal district court ordered the action to proceed on her first amended complaint.  The defendants filed motions to dismiss the first amended complaint.  In April 2018, the motions were granted with leave to amend, and Verrees was warned that any amended complaint was to comply with Rule 8(a), in that it had to "clearly and concisely set forth her claims, should not address matters not directly related to any of her claims, that 'any excessively long or digressive amended complaint will not meet the Rule 8 standard,' and that this would be [her] final opportunity to plead her case."

Verrees filed a 166-page second amended federal complaint with 32 pages of exhibits.  In June 2018, the district court dismissed Verrees's second amended federal complaint with prejudice, stating the pleading was "neither clear nor concise, nor was it in compliance with Rule 8."

**PROCEDURAL HISTORY**

On April 16, 2018, while her federal lawsuit was pending, Verrees initiated this lawsuit by filing a complaint in Fresno County Superior Court.  Verrees alleged fraud, breach of contract, negligent infliction of emotional distress, intentional infliction of emotional distress, and civil conspiracy against Davis, Wells, Fields-Keene, CRMC, Practice Group, UNA, and Santé.

In September 2018, Verrees filed a 145-page first amended complaint for fraud, breach of contract, negligent infliction of emotional distress, intentional infliction of

Administrators.  Santé had denied Verrees's request to designate her as an "approved provider."

5.

emotional distress, and civil conspiracy. The primary difference between Verrees's initial and first amended complaint was the addition of "the California Regents" as a named defendant. Verrees stated the California Regents subsumed UCSF Fresno and, for convenience, this opinion uses UCSF Fresno to refer to that defendant.

In October 2018, Practice Group, UNA, and Fields-Keene filed a demurrer asserting that all of Verrees's causes of action were time-barred under the applicable statute of limitations, barred by the doctrine of collateral estoppel, failed to state facts sufficient to state a cause of action, and were fatally uncertain. These defendants argued collateral estoppel effect should be given on the issue adjudicated in the arbitration proceedings. CRMC, Wells and Santé also filed a demurrer asserting Verrees's first amended complaint failed to state facts sufficient to constitute a cause of action and was uncertain.

In November 2018, the trial court heard argument on defendants' demurrers and took the matter under advisement. Two days later, the court issued a minute order sustaining the demurrers without leave to amend.

On December 20, 2018, the trial court signed and filed a joint order dismissing Verrees's first amended complaint with prejudice as to Fields-Keene, Practice Group, UNA, CRMC, Wells, and Santé. A notice of entry of order was filed and served the next day.

In February 2019, Davis and UCSF Fresno filed a demurrer to Verrees's first amended complaint, asserting it was uncertain, failed to state facts sufficient to constitute a cause of action, and failed to allege fraud with the requisite particularity. In April 2019, the trial court held a hearing and adopted its tentative ruling to sustain the demurrer to the first amended complaint without leave to amend. On May 1, 2019, an order dismissing Verrees's first amended complaint with prejudice as to Davis and UCSF Fresno was filed. A notice of entry of this order was filed and served on May 21, 2019. The following month, Verrees filed a notice of appeal. The timing and contents of the notice

6.

of appeal are significant for this appeal because they determine the issues and parties properly before this court.

## DISCUSSION

I.      SCOPE OF THE APPEAL

      A.      Dismissal Orders

           *1.      Appealability*

Code of Civil Procedure section 581d provides in part: "All dismissals ordered by the court shall be in the form of a written order signed by the court and filed in the action and those orders when so filed shall constitute judgments and be effective for all purposes." Under this statute, the December 20, 2018 order dismissing Verrees's first amended complaint with prejudice as to six defendants constitutes a "judgment." Therefore, that order is appealable pursuant to Code of Civil Procedure section 904.1, subdivision (a)(1), which states an appeal may be taken "[f]rom a judgment." (See *McAllister v. County of Monterey* (2007) 147 Cal.App.4th 253, 278 [an order dismissing a complaint with prejudice constitutes an appealable judgment].) Similarly, the May 1, 2019, order dismissing Verrees's first amended complaint with prejudice as to Davis and UCSF Fresno constitutes an appealable judgment.

           *2.      Timeliness*

On June 25, 2019, Verrees filed a notice of appeal using Judicial Council form APP-002. Verrees marked the box indicating the appeal was taken from a "Judgment of dismissal after an order sustaining a demurrer" and stated the judgment was entered on May 21, 2019 – the filing date of the notice of entry of order dismissing Verrees's first amended complaint as to Davis and UCSF Fresno.

First, Verrees's appeal is timely with respect to the order dismissing the first amended complaint with prejudice as to Davis and UCSF Fresno. The notice of appeal was filed 35 days after the notice of entry of that order. Under California Rules of Court,

7.

rule 8.104(a)(1)(B),[4] a notice of appeal is timely if it is filed within 60 days of a party serving a notice of entry of the judgment.

Second, Verrees's appeal is not timely with respect to the December 2018 order dismissing Verrees's first amended complaint with prejudice as to Fields-Keene, Practice Group, UNA, CRMC, Wells, and Santé. The notice of entry of that order was served on December 21, 2018, which is 151 days before Verrees filed her notice of appeal. "[T]he filing of a timely notice of appeal is a jurisdictional prerequisite." (*Silverbrand v. County of Los Angeles* (2009) 46 Cal.4th 106, 113.) Therefore, we have no jurisdiction – that is, power or authority – to determine the merits of Verrees's challenges to the December 2018 order.

Verrees refers to the principle that " '[a] notice of appeal shall be liberally construed in favor of its sufficiency' [citation]." (*Vibert v. Berger* (1966) 64 Cal.2d 65, 67.) Verrees contends that, under the rule of liberal construction, a mistake in designating the parties is not fatal. She cites *Boynton v. McKales* (1956) 139 Cal.App.2d 777 as a case where the notice of appeal identified only one defendant and was construed to include both defendants. (*Id*. at pp. 787–788.) Even if Verrees's notice of appeal is construed to include the December 2018 order, that construction does not cure the untimeliness of the appeal as to that order of dismissal. Therefore, our jurisdiction is limited to the May 2019 order dismissing the case as to Davis and UCSF Fresno.

B.     Order Denying Motion for Leave to Amend

Verrees's opening brief lists the denial of a motion for leave to amend as one of the issues on appeal. We do not separately address her claim of trial court error relating to that specific motion because that claim is redundant to her argument that the trial court erred in sustaining the demurrer *without leave to amend*. (See Code Civ. Proc., §§ 472

---

[4] Subsequent references to a numbered "Rule" are to the California Rules of Court.

8.

[amendment without leave], 473, subd. (a) [discretionary authority to grant leave to amend].)

As background for this conclusion, we note that Verrees filed the motion for leave to amend after Davis and UCSF Fresno filed their demurrer and before that demurrer was heard. The motion attached a copy of a proposed second amended complaint alleging five causes of action against all defendants. Davis and UCSF Fresno filed an opposition to and request that the trial court strike Verrees's motion for leave to file a second amended complaint. On June 24, 2019, the day before Verrees filed her notice of appeal, the court issued a tentative ruling denying the motion for leave to amend as moot because the demurrers of all defendants already had been sustained without leave to amend. Neither side requested argument. Accordingly, on June 27, 2019, the trial court issued a minute order adopting its tentative ruling and denying Verrees's motion for leave to file a second amended complaint. Verrees did not file a separate notice of appeal from that order or amend her June 25, 2019 notice of appeal.

The absence of a separate appeal does not, as a practical matter, affect the outcome of this appeal. Our consideration of the proposed second amended complaint is appropriate because the "issue of leave to amend is always open on appeal." (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 746; Code Civ. Proc., § 472c.) Thus, we are not limited to considering the showing made in Verrees's opposition to the demurrer. If the proposed second amended complaint failed to state facts sufficient to constitute a cause of action, then the motion for leave to amend was properly denied. (*California Casualty General Ins. Co. v. Superior Court* (1985) 173 Cal.App.3d 274, 280, disapproved on another ground by *Kransco v. American Empire Surplus Lines Ins. Co.* (2000) 23 Cal.4th 390, 407, fn. 11.)

Alternatively, if the second amended complaint did allege facts sufficient to state one or more causes of action, we will conclude Verrees has shown the defects in her first

9.

amended complaint could be cured by amendment and, thus, has shown the trial court abused its discretion in sustaining the demurrer *without leave to amend*.

## II.    BASIC PRINCIPLES GOVERNING DEMURRERS

### A.    Stating a Cause of Action

A complaint must contain "[a] statement of the facts constituting the cause of action, in ordinary and concise language." (Code Civ. Proc., § 425.10, subd. (a)(1).) When a complaint "does not state facts sufficient to constitute a cause of action," a defendant may raise that objection by filing a demurrer. (*Id.*, § 430.10, subd. (e).) Whether a pleading alleges facts sufficient to constitute a cause of action is a question of law. (*Neilson v. City of California City* (2005) 133 Cal.App.4th 1296, 1305.)

The facts that must be written down in a complaint to properly allege a cause of action are referred to as the cause of action's essential elements. The essential elements are determined by the substantive law that defines the cause of action – that is, defines the circumstance in which a plaintiff has a right to relief from a harm suffered. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2020) ¶ 6:121, pp. 6–36.)

### B.    Standard of Review

Under California's constitutional doctrine of reversible error, a trial court's order is presumed correct, and the appellant must affirmatively demonstrate prejudicial error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; see *Jameson v. Desta* (2018) 5 Cal.5th 594, 609 ["the burden is on an appellant to demonstrate … that the trial court committed an error"].) When determining whether a trial court erred in sustaining a general demurrer without leave to amend, appellate courts address two separate questions, each with its own standard of review. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

10.

First, an appellate court reviews the complaint de novo to determine whether the complaint states facts sufficient to constitute a cause of action. (*Blank v. Kirwan*, *supra*, 39 Cal.3d at p. 318.) In conducting this de novo review, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. (*Ibid*.) The pleader's contentions or conclusions of law are not controlling because appellate courts must independently decide questions of law without deference to the legal conclusions of the pleader or the trial court. (*Neilson v. City of California City*, *supra*, 133 Cal.App.4th at p. 1304.)

Second, the question of whether leave to amend should have been granted requires the appellate court to determine whether there is a reasonable possibility that the defect can be cured by amendment; if it can be the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. (*Blank v. Kirwan*, *supra*, at p. 595; see *Sierra Palms Homeowners Assn. v. Metro Gold Line Foothill Extension Construction Authority* (2018) 19 Cal.App.5th 1127, 1132 [plaintiff may meet burden of proving an amendment would cure a legal defect for the first time on appeal].) " 'To satisfy that burden on appeal, a plaintiff "must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading." [Citation.] … The plaintiff must clearly and specifically set forth … factual allegations that sufficiently state all required elements of that cause of action. [Citations.] Allegations must be factual and specific, not vague or conclusionary. [Citation.]' [Citation.]" (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1491, quoting *Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43–44.)

Another principle of appellate review states that "that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." (*Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329.) Under this principle, we uphold a trial

court's ruling "on any sufficient ground, whether relied on by the court below or not. [Citation.]" (*Wheeler v. County of San Bernardino* (1978) 76 Cal.App.3d 841, 846, fn. 3.)

III.    MERITS OF THE APPEAL

A.    Fraud

*1.    Elements*

The essential elements of a cause of action for fraud and deceit are (1) misrepresentation, (2) knowledge of the falsity or scienter, (3) intent to defraud – that is, induce reliance, (4) justifiable reliance, and (5) resulting damages. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638; see *Mirkin v. Wasserman* (1993) 5 Cal.4th 1082, 1092 [plaintiff in action for deceit must plead common law element of actual reliance]; cf. Civ. Code, § 1572 [actual fraud] with Civ. Code, § 1710 [deceit defined].) These elements "must be pled specifically; general and conclusory allegations do not suffice. [Citations.]" (*Lazar*, *supra*, at p. 645.) The requirement for specific allegations " 'necessitates pleading *facts* which "show how, when, where, to whom, and by what means the representations were tendered." ' [Citation.]" (*Ibid*.) Stated another way, a plaintiff must allege "with particularity who made the statements, when they were made, what was actually stated, [and] why they were false. [Citations.]" (*Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 763.) Under these pleading rules, a plaintiff's conclusory allegation of reliance is insufficient to state that essential element. (*Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1091.)

A cause of action for fraud and deceit based on concealment "is not actionable absent all the elements of fraud." (*Persson v. Smart Inventions, Inc.* (2005) 125 Cal.App.4th 1141, 1168.) Thus, "concealment does not amount to fraud unless and until there is reliance upon it." (*Ibid*.) Furthermore, the rule that fraud must be pleaded with particularity "applies equally to a cause of action for fraud and deceit based on

concealment.  [Citation.]"  (*Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1472.)

            2.     *Facts Alleged*

The fraud cause of action in the first amended complaint begins by stating that Verrees realleges the allegations in the preceding 114 pages and then states:  "Defendants made multiple false representations against [Verrees] through blackmailing sources. Dr. Davis knew the accusations were false as he had manufactured them; they were his fiction."  It also alleges that (1) CRMC bolstered the accusations by sending them to an expert (Shuer), accompanied by unknown supporting material, and the expert corroborated the alleged wrongdoing related in the accusations; (2) Davis submitted Verrees's "name and the fraudulent allegations, obtained through blackmail and extortion, to the Medical Board of California" in 2013; (3) defendants transmitted to St. Agnes the fraudulent allegations that they had induced the expert to corroborate, which poisoned her chance of working at St. Agnes and competing with her former employer; and (4) defendants used fraudulent documentation and suborned perjury in the 2014 arbitration proceeding on Verrees's sex discrimination claim.  Although the Medical Board completed its investigation and exonerated Verrees near the end of 2015, Verrees alleges defendants' fraudulent allegation devastated her professionally and financially and ruined her future prospects in the field of neurosurgery.  More specifically, she alleges defendants' actions ruined her opportunity to complete Neurosurgery Board Certification.

The first amended complaint also describes an incident where a patient Verrees treated had a shunt malfunction six weeks after surgery, and the patient and the patient's husband wanted Verrees to continue as the neurosurgeon on the case, but the husband's view changed when Davis beckoned him into an outer hallway at the hospital, CRMC,

and told him falsehoods, It also alleges that in October 2012, Davis falsely told a patient's husband that Verrees did not have privileges at CRMC.

The first amended complaint also alleges defendants acted intentionally to conceal unethical and corrupt practices, delayed discovery, and obstructed justice. It alleges defendants threatened and intimidated witnesses, which caused witnesses to withhold testimony and prevented the revelation of material facts.

In allegations preceding the fraud cause of action, the first amended complaint alleges that Verrees "found cold rejection without debate, discussion or reason in response to her suggestions" concerning patient care from Davis and trepidation from members of the trauma team to question Davis about the protocols used and espoused by Davis. Eleven pages of the first amended complaint describe Verrees's great frustration with the rejection of her suggestions and attributes such rejection to nefarious motives.

Our review of the first amended complaint did not locate allegations of the specificity needed to state a fraud cause of action. For instance, the pleading did not state how Verrees reasonably relied on a misrepresentation of Davis or UCSF Fresno to her detriment. With respect to UCSF Fresno, the pleading does not specifically state the contents of any misrepresentations made by UCSF Fresno, when the misrepresentation was made, who made it, and when. Thus, the allegations with respect to fraud by Davis and UCSF Fresno lack the specificity need to state the essential elements of a fraud cause of action.

### 3. *Verrees's Contentions*

Verrees's opening brief contends her cause of action for fraud was based on concealment, not deceit, and such a claim was adequately pleaded. Verrees asserts the trial court "did not consider concealment whereby the Defendants does not make a representation." As to the element of reliance, Verrees argues she need only allege she

14.

was unaware of the concealed or suppressed fact and would not have acted as she did if she had known of that fact.

Verrees contends she alleged the defendants "continue to conceal the true facts about [her] employment" and cites paragraph 35 of her proposed second amended complaint. That paragraph states that defendants "continue to make the fraudulent representations based on the concealments." The next paragraph states that Verrees "reasonably relied on Defendants' deception." The concealments referred to are described in paragraph 18 of the proposed second amended complaint, which states in full: "Definitely beginning in 2016 and continuing through the present, Defendants have failed and refused to accurately report that [Verrees] left her position in good standing and have refused and failed to accurately acknowledge and report that she had committed no wrongdoing during her time with Defendants."

In *Mirkin v. Wasserman*, *supra*, 5 Cal.4th 1082, our Supreme Court recognized that it is possible to prove reliance on an omission or concealment by proving "that, had the omitted information been disclosed, one would have been aware of it and behaved differently." (*Id*. at p. 1093.) The court's use of the word "one" in this statement refers to the plaintiff. Thus, a plaintiff must plead and prove that he or she would have behaved differently if the information had been disclosed.

Neither the first amended complaint nor the proposed second amended complaint state what Verrees would have done differently if defendants had accurately reported information about her employment. In addition, neither document states how her different behavior would have avoided any damage or injury caused by the concealment alleged. The conclusory allegation that Verrees "reasonably relied on Defendants' deception" does not provide the particularity necessary to establish she would have behaved differently in the absence of the concealment.

In sum, Verrees has not alleged and has not shown she can allege a cause of action for fraud based on deceit or concealment with the particularity required by California

15.

law.  Rather, she appears to be claiming that defendants are deceiving the public and health care community about her merits as a neurosurgeon and that deception has harmed her professionally and financially.  The fundamental problem with this approach is that a cause of action for fraud requires the deception to be directed *at the plaintiff* and causes the plaintiff to detrimentally rely on that deception.  A fraud cause of action does not reach the deception of others.[5]  Accordingly, the trial court properly sustained the demurrer to the fraud cause of action without leave to amend.

B.      Breach of Contract

The essential elements of a breach of contract cause of action are (1) the existence of the contract between the parties, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach of a contract term, and (4) the resulting damages to the plaintiff.  (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821, citing *Reichert v. General Ins. Co.* (1968) 68 Cal.2d 822, 830.)  To properly plead a cause of action for breach of contract, "the complaint must indicate on its face whether the contract is written, oral, or implied by conduct.  [Citation.]"  (*Otworth v. Southern Pacific Transportation Co.* (1985) 166 Cal.App.3d 452, 458–459, fn. omitted.)  "If the action is based on an alleged breach of a written contract, the terms must be set out verbatim in the body of the complaint or a copy of the written instrument must be attached and incorporated by reference.  [Citation.]"  (*Id*. at p. 459.)

Verrees's breach of contract cause of action is set forth on pages 117 through 127 of the first amended complaint.  Nowhere on those pages does Verrees state whether an alleged contract with Davis or UCFS Fresno is written, oral, implied by conduct, or a combination of these methods for manifesting the mutual assent necessary to form a contract.  Furthermore, the first amended complaint did not set forth verbatim the terms

---

[5] Verrees's causes of action for antitrust violations, interference with prospective economic advantage, and defamation were asserted in her federal lawsuit.  Thus, we need not analyze whether her allegations state these types of claims.

of the employment agreement or the terms of any other agreement and no written agreement was attached to the first amended complaint. Therefore, we conclude the first amended complaint failed to comply with the basic rules governing the pleading a breach of contract cause of action. The first amended complaint's reference to an "Employment Agreement" does not overcome these defects. Thus, the trial court properly sustained the demurrer to the breach of contract cause of action.

Consequently, the key issue is whether Verrees should have been allowed to amend her breach of contract cause of action to cure its defect. The arbitration decision describes a "Physician Employment Agreement" entered into by Practice Group and Verrees and signed by Verrees on July 22, 2008. The decision states that under the agreement, Practice Group employed Verrees as a neurosurgeon for a term beginning September 1, 2008, and ending August 31, 2011. However, neither Davis nor UCSF Fresno are a party to that agreement and, therefore, they cannot be held liable for a breach of its terms. Therefore, Verrees has not shown her employment agreement can served as the basis for a breach of contract cause of action against Davis or UCSF Fresno.

Next, we consider Verrees's attempt to plead a breach of contract cause of action in paragraphs 13 through 19 of her proposed second amended complaint. Paragraph 14 states: "On or about September 2008, [Verrees] entered into a written contract with Defendants, the relevant terms of which provided for [Verrees] to practice as a neurosurgeon at CRMC and [Practice Group], with an academic appointment from UCSF [Fresno] …. In the written and implied terms of the Agreement, Defendants could investigate complaints and conduct disciplinary reviews of [Verrees] under the guise of maintaining professional standard. Defendants were obligated to accurately and truthfully report [Verrees's] status." The contents of the proposed second amended complaint do not satisfy the basic rules governing the pleading a breach of contract cause of action because the terms of the alleged contract are not set forth verbatim or, alternatively, a copy of the written contract was not attached to the proposed pleading.

17.

Consequently, Verrees had not carried her burden of demonstrating she could cure the defects in her breach of contract cause of action by alleging Davis, UCSF Fresno, or both were a party to a written contract and breached a term of that contract. Furthermore, Verrees made no showing that she could allege that she and these defendants entered into an oral contract or a contract implied by conduct. Therefore, the trial court did not abuse its discretion in refusing to grant Verrees leave to amend her breach of contract cause of action against Davis and UCSF Fresno.

C.     Intentional Infliction of Emotional Distress

        *1.     Elements*

The essential elements of a cause of action for intentional infliction of emotional distress are (1) extreme and outrageous conduct by the defendant with the intention of causing, or with reckless disregard for the probability of causing, emotional distress; (2) the plaintiff's suffering extreme or severe emotional distress; and (3) actual and proximate cause of the plaintiff's extreme or severe emotional distress by the defendant's outrageous conduct. (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 1001 (*Potter*).) The alleged conduct must be so extreme as to exceed all bounds usually tolerated in a civilized community. (*Cochran v. Cochran* (1998) 65 Cal.App.4th 488, 494.) The requisite severe emotional distress must be such that no reasonable person in civilized society should be expected to endure it. (*Potter*, *supra*, at p. 1004.) Liability for emotional distress does not extend to " ' "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." [Citation.]' [Citations.]" (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1051.)

        *2.     Timeliness*

A general demurrer, besides challenging whether the facts alleged are sufficient to state all of the essential elements of a cause of action, may be used to assert a statute of limitations defense. (*SLPR, L.L.C. v. San Diego Unified Port District* (2020) 49

18.

Cal.App.5th 284, 316.) The two-year statute of limitations in Code of Civil Procedure section 335.1 for person injuries "caused by the wrongful act or neglect of another" applies to claims for intentional or negligent infliction of emotional distress. As a general rule, the untimeliness of the cause of action must clearly and affirmatively appear on the face of the complaint and matters judicially noticed before a demurrer will be sustained on that ground. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.)

Here, Verrees's lawsuit was filed on April 16, 2018. As a result, the outrageous conduct intended to cause Verrees emotional distress must have occurred on or after April 16, 2016. This date is after the proceedings before the Medical Board were concluded in late 2015. Therefore, the allegations that defendants presented false accusations to the Medical Board in 2013 and confirmed false allegations throughout 2014 cannot serve as the outrageous conduct necessary for a timely intentional infliction of emotional distress claim. Similarly, the allegations that defendants' conduct precipitated Verrees's resignation from St. Agnes in October 2012 occurred too long ago to serve as the requisite outrageous conduct.

### 3. Facts Alleged

The allegations constituting the intentional infliction of emotional distress claim are stated on a single page of the first amended complaint. Verrees incorporated her preceding allegations and alleged (1) "[t]he conduct of Defendants was extreme and outrageous"; (2) "Defendants' conduct, using known fictitious allegations to cause cumulative damage to [her], and Defendants' active obstruction of justice to prevent exposure of the fraudulent material, and the illegal means used to obtain it, further worsening the agony to [her], exceeds all bounds of that usually tolerated in a civilized community"; (3) "Defendants knew using their fraudulent allegations as they did in cumulative fashion, through 2015, against [her] in multiple ways over multiple years

19.

would result in the devastation of [her] neurosurgery career and potential in neurosurgery"; and (4) "Defendants intended to inflict injury, acting as described knowing that injury would result."

On appeal, Verrees contends the first amended complaint "does allege outrageous comments not only in 2016, but into 2017 and 2018." Verrees refers to the allegations that "Defendants continued to wield fraudulent allegations to harm [her] in numerous ways over the years – 2011, 2012, 2013, 2014, 2015, 2016, causing cumulative damage" and that an assistant dean at UCSF Fresno "became responsible for fabricated offenses originated from crime and discrimination, targeted to dog [Verrees's] footsteps for years – through 2011, then 2012, 2013, 2014, 2015, 2016 – and including 2017 and 2018 – to the present, demolishing her career and potential."

To be actionable, the allegedly outrageous conduct must cause *severe* emotional distress. The allegations in the first amended complaint's cause of action for intentional infliction of emotional distress do not address this element. Elsewhere, the first amended complaint described an incident that occurred in 2009, involved two male neurosurgeons, and generated "fear, anxiety and doubt." Also, the negligent infliction of emotional distress allegations state that the defendants' conduct "set off a destructive chain of events which plagued [her] for years and destroyed her career, peace of mind, and potential" and the fraud and other misconduct "caused [her] suffering and severe emotional distress."

### 4. Severe Emotional Distress

First, we conclude an allegation that a plaintiff suffered severe emotional distress is conclusory and is insufficient to adequately plead that element. Also, the additional allegation that Verrees's peace of mind as destroyed fails to provide the necessary facts.[6]

---

[6] The allegation about fear, anxiety and doubt occurred in 2009, and it is unclear whether those feelings were experienced by Verrees or "the Neurosurgery PAs." Because the statute of limitations has run on any outrageous acts done in 2009, that

In *Hughes v. Pair*, *supra*, 46 Cal.4th 1035, the plaintiff sued a trustee for, among other things, intentional infliction of emotional distress, alleging that he made sexually explicit, offensive, and threatening comments, in effect, demanding sex if she wanted her request for funds from the trust to be granted.  (*Id*. at p. 1040.)  The appellate court upheld a summary judgment against the plaintiff, concluding her allegations that "she has suffered discomfort, worry, anxiety, upset stomach, concern, and agitation" as a result of the defendant's conduct "do not comprise ' " 'emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.' " ' [Citation.]" (*Id*. at p. 1051.)  In comparison, in *Hailey v. California Physicians' Service* (2007) 158 Cal.App.4th 452, the plaintiff alleged the wrongful rescission of his health coverage caused severe emotional distress, which resulted in vomiting, stomach cramps, and diarrhea.  (*Id*. at pp. 476–477.)  The appellate court concluded these allegations satisfied the element of severe emotional distress and reversed the order sustaining the defendant's demurrer.  (*Id*. at pp. 477–478.)

Applying the standard of severity established by the foregoing cases, we conclude the first amended complaint does not provide sufficient facts to show that the alleged emotional distress was severe.  Accordingly, we conclude the first amended complaint did not sufficiently allege that element and, as a result, the demurrer was properly sustained on that ground.

### 5. *Leave to Amend*

Next, we consider whether Verrees has demonstrated a reasonable probability of curing the defect in an amendment.  Our evaluation of this question focuses on the content of her proposed second amended complaint. Paragraph 43 of that document states Verrees "suffered severe emotional distress as a result of Defendants' conduct and

---

conduct and Verrees's reaction cannot be used to satisfy the elements of a viable cause of action for the infliction of emotional distress.

action, and Defendants' continued conduct and actions."  No details are provided to explain why the alleged emotional distress was severe.  Accordingly, Verrees has not carried her burden of demonstrating she could allege facts showing her emotional distress was severe.  (See *Rossberg v. Bank of America, N.A.*, *supra*, 219 Cal.App.4th at p. 1491 [to show appellate court an amendment could cure the defective pleading, plaintiff must clearly set forth factual allegations sufficient to state the cause of action's missing element].)

Because the element of severe emotional distress is missing, we need not consider other elements.  In particular, we do address whether Verrees could allege that conduct by Davis or UCSF Fresno and occurring after April 16, 2016, was *extreme and outrageous*.

### D.    Negligent Infliction of Emotional Distress

"[T]here is no independent tort of negligent infliction of emotional distress. [Citation.]  The tort is negligence, a cause of action in which a duty to the plaintiff is an essential element.  [Citations.]  That duty may be imposed by law, be assumed by the defendant, or exist by virtue of a special relationship.  [Citation.]"  (*Potter*, *supra*, 6 Cal.4th at pp. 984–985.)  The requisite duty "may be imposed by law, be assumed by the defendant, or exist by virtue of a special relationship.  [Citation.]"  (*Id*. at p. 985.) Another limitation on negligent infliction of emotional distress claims is that "with rare exceptions, a breach of the duty must threaten physical injury, not simply damage to property or financial interests.  [Citations.]"  (*Ibid*.)

On appeal, Verrees contends there was a preexisting relationship between her and defendants that gave rise to a duty and refers to article IV in a written agreement.  The shortcoming of this argument is that Verrees has not shown that Davis or UCSF Fresno were parties to that written agreement – an issue discussed in part III.B. of this opinion. Thus, her arguments based on that alleged duty do not demonstrate she has, or could,

22.

allege the existing of a duty necessary to support the negligent infliction of emotional distress claim.

Verrees also refers to the general rule that when a person with no duty to speak " 'undertakes to do so, either voluntarily or in response to inquiries, he is bound not only to state truly what he tells but also not to suppress or conceal any facts within his knowledge which materially qualify those stated. If he speaks at all he must make a full and fair disclosure.' [Citations.]" (*Rogers v. Warden* (1942) 20 Cal.2d 286, 289.) This rule and the duty to speak truthfully does not aid Verrees because she had not identified any incomplete or misleading statements about her made by Davis or UCSF Fresno in the two years preceding her complaint.

Consequently, we conclude the first amended complaint's negligent infliction of emotional distress claim is deficient because it does not adequately allege the existence of a duty (1) imposed by law, (2) assumed by Davis or UCSF Fresno, or (3) existing by virtue of a special relationship. (See *Potter*, *supra*, 6 Cal.4th at p. 985.) Similarly, Verrees's proposed second amended complaint and the contents of her appellate brief do not demonstrate she can amend to allege the existence of such a duty. Therefore, the trial court did not err in sustaining the demurrer to the negligent infliction of emotional distress claim without leave to amend.

E.      Civil Conspiracy

"Conspiracy" is not itself a cause of action; rather, it is "a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. [Citation.]" (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510–511.) A "civil conspiracy," therefore, standing alone, " ' "does not per se give rise to a cause of action unless a civil wrong has been committed resulting in damage." ' [Citation.]" (*Id.* at p. 511.)

23.

As discussed above, Verrees did not properly allege a valid cause of action and, therefore, has not identified an underlying "civil wrong" upon which a conspiracy claim could be based. Therefore, we conclude Verrees's first amended complaint also fails to state Davis or UCSF Fresno engaged in a civil conspiracy. Similarly, because Verrees has not shown she could cure the defects in her other causes of action by amendment, she has not shown an ability to cure the defect in her civil conspiracy claim.

## DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.


POOCHIGIAN, ACTING P. J.

WE CONCUR:


DETJEN, J.


SMITH, J.

24.